## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MUHAMMED GUNAYDIN and DELVIS TAVAREZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Yzer, LLC,<br><br>Defendant. | Case No. 1:25-cv-00198-RMB-EAP |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO STAY AND COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO STRIKE CLASS AND COLLECTIVE ALLEGATIONS

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     THE ISSUES TO BE DECIDED BY THE COURT OR
        ARBITRATOR .................................................................................................... 2

III.    THE COURT SHOULD COMPEL TAVAREZ TO ARBITRATION ........... 4

        A.      The Court can compel arbitration under the Logistics-Carrier
                Agreement under the NJAA……………………………………………..4

        B.      The Court can compel arbitration under either the YZER Arbitration
                Agreement or the Openforce Agreement…………………………..8

IV.     THE COURT SHOULD COMPEL GUNAYDIN TO
        ARBITRATION. ............................................................................................... 11

V.      ALTERNATIVELY, THE COURT SHOULD STRIKE THE CLASS
        AND COLLECTIVE ALLEGATIONS. .......................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Arafa v. Health Express Corp.*,
  233 A.3d 495 (N.J. 2020) .................................................................... 1, 4, 5, 13

*Atalese v. U.S. Legal Servs. Grp., L.P.*,
  99 A.3d 306 (N.J. 2014) .............................................................................. 4

*Calabotta v. Phibro Animal Health Corp.*,
  213 A.3d 210 (N.J. App. Div. 2019) ........................................................... 7

*Coinbase, Inc. v. Suski*,
  602 U.S. 143 (2024) ..................................................................................... 2

*Collins v. Mary Kay, Inc.*,
  874 F.3d 176 (3d Cir. 2017) ................................................................. 12, 13

*Colon v. Strategic Delivery Sols., LLC*,
  210 A.3d 932 (N.J. App. Div. 2019) ........................................................ 4, 6

*Cuneo v. Nat'l Delivery Sys., Inc.*,
  178 N.E.3d 899 (Mass. Ct. App. 2021) ................................................. 10, 11

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates,*
  *S.A.S.*,
  269 F.3d 187 (3d Cir. 2001) ........................................................................ 9

*Easterday v. USPack Logistics LLC*,
  No. 15-7559, 2016 WL 11704552 (D.N.J. June 29, 2016) ........................ 11

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018) .................................................................................. 5, 6

*Espinosa v. SNAP Logistics Corp.*,
  No. 17 Civ. 6383, 2018 WL 9563311 (S.D.N.Y. Apr. 3, 2018) ................ 11

*Fischer v. Fed. Express Corp.*,
  42 F.4th 366 (3d Cir. 2022) ...................................................................... 15

*Gagne v. Stallion Express, LLC*,
  No. 4:22-CV-40008-TSH, 2022 WL 17658121 (D. Mass. Sept. 15, 2022) . 9

*Green v. U.S. Xpress Enters., Inc.*,
  434 F. Supp. 3d 633 (E.D. Tenn. 2020) ...................................................... 6

*Grimes v. Modco, Inc.*,
  No. 3:18-cv-518, 2020 WL 1325357 (W.D. Ky. Mar. 20, 2020) .............. 11

*Kangapoda Corp. v. Facebook, Inc.*,
  No. 21-9168, 2021 WL 11721658 (D.N.J. Dec. 13, 2021) .......................... 7

*Kernahan v. Home Warranty Adm'r of Fla., Inc.*,
  199 A.3d 766 (N.J. 2019) ................................................................ 6

*Mancuso v. MDG USA, Inc.*,
  No. 23-1963, 2024 WL 1230149 (3d Cir. Mar. 22, 2024) ...................... 7, 8

*Max Warehousing, LLC v. L & P Materials Mfg., Inc.*,
  No. 1:08-cv-1330, 2011 WL 13269796 (N.D. Ga. Jan. 24, 2011).............. 12

*Noonan v. Comcast Corp.*,
  No. 3:16–cv–00458, 2017 WL 4799795 (D.N.J. Oct. 24, 2017) ............... 13

*Norcom Rsch., LLC v. Net2Phone Glob. Servs., LLC*,
  No. CV 20-12592 (SRC), 2021 WL 1153140 (D.N.J. Mar. 26, 2021)....... 14

*Pace v. Hamilton Cove*,
  295 A.3d 1251 (N.J. App. Div. 2023) ............................................... 5

*Pace v. Hamilton Cove*,
  317 A.3d 477 (N.J. 2024) ............................................................... 5

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967) ...................................................................... 3

*Ricci v. Sears Holding Corp.*,
  No. 14–3136, 2015 WL 333312 (D.N.J. Jan. 23, 2015) .......................... 13

*Savarese v. Corcoran*,
  709 A.2d 829 (N.J. Ch. Div. 1997) .................................................. 8

*Singh v. Uber Techs. Inc.*,
  235 F. Supp. 3d 656 (D.N.J. 2017)............................................. 4, 7, 14

*Singh v. Uber Techs., Inc.*,
  571 F. Supp. 3d 345 (D.N.J. 2021)................................................... 5

*Skuse v. Pfizer, Inc.*,
  236 A.3d 939 (N.J. 2020) .............................................................. 13

*State v. Campbell*,
  998 A.2d 500 (N.J. App. Div. 2010) ................................................ 7

*State v. Marain*,
  731 A.2d 109 (N.J. App. Div. 1999) ................................................ 7

*Tracinda Corp. v. DaimlerChrysler AG*,
  502 F.3d 212 (3d Cir. 2007) .......................................................... 12

*Vilches v. The Travelers Companies, Inc.*,
    413 F. App'x 487 (3d Cir. 2011) ................................................................. 14

*Wilhoit v. AstraZeneca Pharms., LP*,
    No. 22-1634, 2024 WL 706901 (D. Del. Feb. 21, 2024) ............................ 15

## Constitutions and Statutes

29 U.S.C. § 216(b) ....................................................................................... 6
N.J. Const. art. I, ¶ 9 .................................................................................... 7
N.J.S.A. § 34:11-4.10(c) ............................................................................... 7
N.J.S.A. § 56:10-7.3(a)(3) ............................................................................ 7
N.J.S.A § 2A:23B-10(c) ............................................................................... 5

## Rules

Fed. R. Civ. P. 38(d) .................................................................................. 12
Fed. R. Civ. P. 39(b) .................................................................................. 12

## Other Authorities

90 A.L.R. Fed. 3d Art. 1 (2024) ............................................................... 13

## I.    INTRODUCTION

Plaintiffs' 40-page Opposition (Opp.) (ECF No. 23) never disputes that Tavarez signed *three* different agreements under which he agreed to arbitrate the claims he asserts against YZER, *see Logistics-Carrier Agreement* (ECF No. 7-2), *YZER Arbitration Agreement* (ECF No. 7-5), and *Openforce Agreement* (ECF No. 7-3). The Opposition likewise acknowledges Gunaydin signed an agreement with third-party administrator SCI under which he agreed to arbitrate "any dispute, claim, question, or disagreement . . . relating to" the "service arrangement between" Gunaydin and "SCI's clients," including YZER. *SCI Agreement* § 26 (ECF No. 7-4).

The Court should reject Plaintiffs' efforts to avoid the contracts they signed. Tavarez, for his part, principally argues that despite agreeing to arbitrate three times over, the only "operative" agreement is the Logistics-Carrier Agreement. Opp. at 10-20. Even if true, he offers no reason why the Court should refuse to compel arbitration under the Logistics-Carrier Agreement. Although he argues the Logistics-Carrier Agreement does not adequately explain he was waiving his right to sue in court (Opp. at 28-35), the Logistics-Carrier Agreement's waiver is almost identical to the waiver the New Jersey Supreme Court approved in *Arafa v. Health Express Corp.*, 233 A.3d 495 (N.J. 2020). And Tavarez's argument that the Logistics-Carrier Agreement's class and collective action waiver violates New Jersey public policy ignores the New Jersey Supreme Court's holding in *Arafa*. The plaintiff delivery drivers there alleged

the same claims under the same statutes alleged here. Yet the New Jersey Supreme Court still enforced the agreements' class and collective waivers and ordered the plaintiffs to pursue their claims in individual arbitration. Tavarez lastly argues that the Logistics-Carrier Agreement's arbitration provision is unconscionable. But he could have opted out of arbitration at his election and chose not to. For that reason and others, he doesn't come close to meeting his burden to show the arbitration provision "shocks the conscious" or is otherwise unconscionable.

Gunaydin, who agreed to arbitrate under the SCI Agreement, launches largely the same misguided challenges as Tavarez. Tellingly, even though *Arafa* involved delivery drivers alleging misclassification and asserting the same claims as Plaintiffs, Plaintiffs' Opposition *never* addressees the case or attempts to distinguish it. The Court should reject Plaintiffs' arguments and compel individual arbitration.

## II.    THE ISSUES TO BE DECIDED BY THE COURT OR ARBITRATOR.

First, as to Tavarez, YZER agrees that whether the Logistics-Carrier Agreement "superseded" the other two agreements Tavarez signed is for the Court to decide. *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024).[1] But if the Court concludes it can compel under the Logistics-Carrier Agreement, it need not resolve this issue.

---

[1] Tavarez calls this a "formation" question, but that isn't accurate. He never disputes he signed each of the agreements. Tavarez's supersession argument presupposes the existence of two or more competing contracts. *Coinbase*, 602 U.S. at 145.

Second, YZER agrees the Court decides the FAA's Section 1 exemption. But again, the Court need not resolve that issue if it concludes it can compel arbitration under state law. ECF No. 7-1 at 19-20. YZER also agrees the Court, not the arbitrator, must decide the enforceability of the class and collective action waivers.

Third, for Gunaydin, YZER agrees the SCI Agreement does not contain a delegation provision (YZER never argued otherwise). But where Gunaydin challenges the SCI Agreement *as a whole* (for example, his unconscionability argument), those are merits questions that must be decided by the arbitrator. *E.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).

Finally, all three of Tavarez's arbitration agreements include both (1) broad delegation provisions; and (2) incorporation of the AAA rules. The Third Circuit has twice held that incorporation of the AAA rules meets the clear and unmistakable requirement to delegate. ECF No. 7-1 at 21. Tavarez does not address those cases or offer any argument specific to the delegation provisions. Instead, he only argues that the delegation provisions are unenforceable because the arbitration provisions themselves are. That is not enough to avoid delegation. The Court should reject Tavarez's remaining arguments and allow the arbitrator to decide them.[2]

---

[2] Even if the Court reaches the arguments that were delegated to the arbitrator, as explained below, none have merit, and the Court should compel arbitration.

## III.  THE COURT SHOULD COMPEL TAVAREZ TO ARBITRATION.

### A.    The Court can compel arbitration under the Logistics-Carrier Agreement under the NJAA.

First, as to Tavarez's argument under *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306 (N.J. 2014), the Logistics-Carrier Agreement contains almost identical waiver language to what the New Jersey Supreme Court approved in *Arafa*. *Logistics-Carrier Agreement* § 15 (disputes "will be resolved through binding arbitration before an arbitrator and not by way of court or jury trial"); *Arafa*, 233 A.3d at 501 (same). Tavarez makes no effort to distinguish *Arafa*. He doesn't even address it.

Second, *Arafa* likewise forecloses Tavarez's argument that New Jersey's wage statutes create a non-waivable right to pursue class and collective actions such that compelling Tavarez to individual arbitration would violate New Jersey public policy. In *Arafa*, like here, an independent contractor driver alleged misclassification and sought damages under New Jersey's wage laws, but the New Jersey Supreme Court still enforced an agreement to arbitrate on an individual basis under New Jersey law. *Id.*; *see also Singh v. Uber Techs. Inc.*, 235 F. Supp. 3d 656, 673 n.11 (D.N.J. 2017) ("Plaintiff's contention that the NJWHL provides an unwaivable substantive right to bring a class action is baseless");[3] *Colon v. Strategic Delivery Sols., LLC*, 210 A.3d 932, 941 (N.J. App. Div. 2019) (enforcing class waiver).

---

[3] On appeal, the Third Circuit ultimately vacated and remanded based on the district court's FAA exemption analysis. But in a subsequent order, the district court

*Pace v. Hamilton Cove*, 317 A.3d 477 (N.J. 2024), undermines Tavarez's position.[4] Everyone in *Pace*—even the lower court—agreed "the right to pursue a class action may be waived in an arbitration agreement." *Pace v. Hamilton Cove*, 295 A.3d 1251, 1256 (N.J. App. Div. 2023).[5] That is because New Jersey's public policy favors arbitration agreements, *Arafa*, 233 A.3d at 506, and "individualized [] proceedings instead of class or collective ones" is "one of arbitration's fundamental attributes." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 508 (2018). Indeed, *Pace* contrasted New Mexico's arbitration statute (which disallows class waivers) with New Jersey law, which has "no such statutory provisions." 317 A.3d at 487 n.2.[6]

Despite all this, Tavarez asks this Court to read into New Jersey law *a non-waivable* "right to bring and maintain class and collective actions" for alleged violations of New Jersey's wage laws. Opp. at 35. The plaintiff in *Epic Systems* made a similar argument, relying on the National Labor Relations Act as establishing a non-waivable right to pursue collective actions under the FLSA. 584 U.S. at 514. The

---

concluded the Third Circuit "upheld" its rulings on the class waiver, unconscionability, and other issues. *Singh v. Uber Techs., Inc.*, 571 F. Supp. 3d 345, 352 (D.N.J. 2021), *aff'd*, 67 F.4th 550 (3d Cir. 2023), *as amended* (May 4, 2023).

[4] Tavarez also cites an inapposite case applying Massachusetts (not New Jersey) law.

[5] The only question in *Pace* was whether standalone class waivers are enforceable. The lower court said no but the Supreme Court *reversed* and *enforced* the waiver.

[6] To the contrary, the NJAA specifically provides that "[t]he court may *not* order consolidation of the claims of a party to an agreement to arbitrate if the agreement prohibits consolidation." N.J.S.A § 2A:23B-10(c) (emphasis added).

FLSA, like New Jersey's wage statutes, expressly authorizes a plaintiff to "maintain[]" an action "in behalf of himself [] and other employees similarly situated." 29 U.S.C. § 216(b). The statute explicitly confers "[t]he *right* . . . to bring an action by or on behalf of any employee, and the *right* of any employee to become a party plaintiff to any such action." *Id.* (emphases added). Even so, the Supreme Court enforced an arbitration agreement requiring individualized arbitration proceedings and confirmed that the FLSA does not confer a *non-waivable* right to collective actions. *Epic Sys.*, 584 U.S. at 514.

Although *Epic Systems* involved the FAA and FLSA, there is no reason to think a different result obtains under the NJAA, which is nearly identical to the FAA,[7] and New Jersey wage laws, which (like the FLSA) do not include any language suggesting the plaintiff's right to sue on behalf of others similarly situated is *non-waivable*. *Colon*, 210 A.3d at 941 (relying on *Epic Sys. Corp*); *see also Green v. U.S. Xpress Enters., Inc.*, 434 F. Supp. 3d 633, 644 (E.D. Tenn. 2020) (applying *Epic Systems'* reasoning in case governed by state arbitration law). To the contrary, just as the Supreme Court in *Epic Systems* construed the FLSA and NLRA to avoid any conflict with the FAA, 584 U.S. at 510, New Jersey courts avoid constructions that

---

[7] The NJAA "us[es] terms nearly identical to those of the FAA" so the "statutory policies of the FAA and New Jersey law are in synchronicity." *Kernahan v. Home Warranty Adm'r of Fla., Inc.*, 199 A.3d 766, 776 (N.J. 2019).

would lead to conflicts between state statutes. *State v. Marain*, 731 A.2d 109, 110–11 (N.J. App. Div. 1999). Interpreting New Jersey's wage statutes as authorizing a *waivable* right to sue on behalf of others gives effect to those statutes and the NJAA while avoiding conflicts.[8] Further, when the New Jersey legislature removes certain categories of claims from compulsory arbitration, it does so explicitly. N.J.S.A. § 56:10-7.3(a)(3). It has not done so for the claims Plaintiffs assert. *Calabotta v. Phibro Animal Health Corp.*, 213 A.3d 210, 226 (N.J. App. Div. 2019) (when the legislature "wishes to issue a 'statutory directive' . . . it knows how to do it").

Finally, regarding unconscionability, Tavarez makes no effort to establish the Logistics-Carrier Agreement (or any agreement) is procedurally or substantively unconscionable. His assertion is "baseless" given he was able to opt out of arbitration. *Singh*, 235 F. Supp. 3d at 675.[9] And the agreement otherwise "treats both sides fairly" and is not substantively unconscionable. *Kangapoda*, 2021 WL 11721658, at *4.

---

[8] This interpretation also follows from the wage statutes themselves. While the wage statutes void certain agreements that waive *substantive* rights (e.g., agreements to be paid below the minimum wage "shall be no defense," N.J.S.A. § 34:11-4.10(c)), no similar language purports to void waivers of *procedural* rights (like class actions, or jury trials). If it were otherwise, *Arafa* would have come out the other way. That plaintiffs can waive the right to pursue class actions is easily seen when juxtaposed with other rights. For example, "[t]he right of trial by jury shall remain inviolate." N.J. Const. art. I, ¶ 9. But even that "sacred constitutional right" is waivable. *State v. Campbell*, 998 A.2d 500, 503 (N.J. App. Div. 2010).

[9] *Kangapoda Corp. v. Facebook, Inc.*, No. 21-9168, 2021 WL 11721658, at *4 (D.N.J. Dec. 13, 2021); *Mancuso v. MDG USA, Inc.*, No. 23-1963, 2024 WL

**B.    The Court can compel arbitration under either the YZER Arbitration Agreement or the Openforce Agreement.**

First, if the Court reaches the issue, Tavarez is wrong that the Logistics-Carrier Agreement superseded either the YZER Arbitration Agreement or the Openforce Agreement. The parties signed all three contracts on the same day. Each covers different subject matters, but all clearly reflect the parties' intent to arbitrate disputes. The clear intent of the parties was to give effect to each contract. Tavarez's position, which would only give effect to the Logistics-Carrier Agreement and render the other two agreements "meaningless or void," violates fundamental contract law. *Savarese v. Corcoran*, 709 A.2d 829, 832 (N.J. Ch. Div. 1997). In any event, if the Court agrees with Tavarez that the Logistics-Carrier Agreement is invalid and unenforceable, then the Court must reject Tavarez's argument because only a valid and enforceable contract can "supersede" another.

Second, Tavarez acknowledges that the Openforce Agreement expressly identifies YZER as a third-party beneficiary. Opp. at 27. Even so, he claims YZER cannot enforce the arbitration provision within the Openforce Agreement because the provision itself did not list YZER. Tavarez cites no case that requires such redundancy before an expressly identified third-party beneficiary can compel arbitration. Moreover, it makes sense the agreement does not again identify YZER as

---

1230149, at *2 (3d Cir. Mar. 22, 2024) (arbitration provision was not unconscionable under Pennsylvania law "because it permitted Mancuso to opt out").

a third-party beneficiary in the arbitration section given that YZER had already been so identified on the second page. For that reason, courts have rejected Tavarez's argument. *Gagne v. Stallion Express, LLC*, No. 4:22-CV-40008-TSH, 2022 WL 17658121, at *3–4 (D. Mass. Sept. 15, 2022) (concluding logistics provider could compel arbitration under Openforce Agreement as third-party beneficiary).[10]

Third, as provided in *Atalese*, both the YZER Arbitration Agreement and the Openforce Agreement explain that by agreeing to arbitrate Tavarez was waiving his right to sue in court. ECF No. 7-1 at 22-23. As he did with the Logistics-Carrier Agreement, Tavarez offers no explanation about why the YZER Arbitration Agreement or the Openforce Agreement are inadequate under *Atalese*. In fact, the Opposition doesn't specifically address any of *Tavarez's agreements* and instead focuses exclusively on the language in Gunaydin's SCI Agreement. Opp. at 30-32. Tavarez's *ipse dixit* that the agreements *he signed* fail under *Atalese* is not enough.

---

[10] *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196 (3d Cir. 2001), is inapposite because Tavarez does not dispute YZER is expressly identified as a third-party beneficiary. And unlike in *E.I. DuPont*, which involved an unwilling non-signatory seeking to avoid arbitration, here YZER, as the non-signatory third-party beneficiary, seeks to compel Tavarez, a signatory, to arbitration. Moreover, the arbitration provision is plainly broad enough to encompass Tavarez's claims against YZER. In any event, even under *E.I. DuPont*, Tavarez's claims against YZER arise out of its third-party beneficiary status because (1) Tavarez's claims hinge on his alleged misclassification and the failure to properly compensate him; and (2) the Openforce Agreement identifies Tavarez as an independent contractor and explains that Openforce will compensate him at the rates negotiated between Tavarez and YZER.

Fourth, Tavarez's unconscionability challenge and his challenge to the class and collective action waivers in the YZER Arbitration Agreement and the Openforce Agreement fail for the same reasons given above. *See supra* Section III.A.

Finally, if the Court reaches the issue, it should conclude the YZER Arbitration Agreement and Openforce Agreement are not exempt "contracts of employment" under Section 1 of the FAA. ECF No. 7-1 at 18-19. Tavarez admits the three contracts he signed are "separate agreements from each other and do not constitute different parts of one single agreement." Opp. at 11.[11] Tavarez never disputes that neither the YZER Arbitration Agreement nor the Openforce Agreement contain any agreement "to perform work" and therefore neither are an exempt contract of employment. ECF No. 7-1 at 18-19; *Cuneo v. Nat'l Delivery Sys., Inc.*, 178 N.E.3d 899 (Mass. Ct. App. 2021) (concluding agreement between driver and third-party payment administrator was not contract of employment under *New Prime*).[12]

---

[11] Accordingly, the Court should reject Tavarez' contradictory argument that all three documents should be lumped together into one supposed exempt "contract of employment." Opp. at 22.

[12] Tavarez largely attacks arguments YZER has not advanced. YZER does not argue the FAA exemption doesn't apply because Tavarez was an independent contractor or was not engaged in interstate commerce. YZER's only exemption argument—and the only issue before the Court concerning the exemption—is that neither the YZER Arbitration Agreement nor the Openforce Agreement contain any agreement "to perform work" by Tavarez.

## IV.  THE COURT SHOULD COMPEL GUNAYDIN TO ARBITRATION.

First, the SCI Agreement is not a contract of employment because it contains no promise to perform work as required by *New Prime*. *Cuneo*, 178 N.E.3d 899. Second, Gunaydin's argument that the SCI Agreement's class and collective waiver is unenforceable fails for the reasons given above. *See supra* Section III.A.

Third, whether the Court applies New Jersey or New York law, YZER is a third-party beneficiary entitled to enforce the SCI Agreement's arbitration provision. The Court addressed this very question in *Easterday v. USPack Logistics LLC*, No. 15-7559, 2016 WL 11704552, at *4 (D.N.J. June 29, 2016), and held (1) there was no conflict between New York and New Jersey law regarding third-party beneficiary status and, (2) under New Jersey law, the defendant logistics provider was a third-party beneficiary of the arbitration provision in the SCI Agreement. *See also Grimes v. Modco, Inc.*, No. 3:18-cv-518, 2020 WL 1325357, at *3 (W.D. Ky. Mar. 20, 2020) (holding logistics provider could enforce arbitration provision in SCI Agreement as third-party beneficiary). YZER can also compel arbitration based on equitable estoppel under New York law. *Espinosa v. SNAP Logistics Corp.*, No. 17 Civ. 6383, 2018 WL 9563311, at *3 (S.D.N.Y. Apr. 3, 2018).

Fourth, Gunaydin's argument that the New York choice of law provision is invalid and that the SCI Agreement's arbitration provision is unenforceable under New Jersey law ultimately turns on his contention that the arbitration provision fails

under *Atalese*'s clear-statement rule. Of course, if the Court concludes the FAA applies to the SCI Agreement then this issue is moot because the FAA preempts the clear-statement rule. ECF No. 7-1 at 26-31. Moreover, Gunaydin has not even demanded a jury trial in this case. Fed. R. Civ. P. 38(d) ("A party waives a jury trial unless its demand is properly served and filed."). So compelling him to arbitration will simply result in his claims being heard by an arbitrator rather than by a judge. Fed. R. Civ. P. 39(b) ("Issues on which a jury trial is not properly demanded are to be tried by the court."). Gunaydin cites no case that invalidated an arbitration agreement under *Atalese* where the plaintiff had not even asserted a right to a jury trial. *See Max Warehousing, LLC v. L & P Materials Mfg., Inc.*, No. 1:08-cv-1330, 2011 WL 13269796, at *3-4 (N.D. Ga. Jan. 24, 2011) (holding court need not resolve plaintiff's contention regarding validity of contractual jury waiver given plaintiff failed to timely demand jury trial).

Even if Gunaydin had made a jury demand, his argument would still lack merit. *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007), unequivocally held that federal law controls the validity and enforceability of contractual jury trial waivers in federal court. Gunaydin does not address the case and does not assert the SCI Agreement fails the "knowing and voluntary" standard applied in federal court. Instead, he cites *Collins v. Mary Kay, Inc.*, 874 F.3d 176 (3d Cir. 2017), which simply held that state law governed the interpretation of the scope

of a forum selection clause and is therefore inapposite.[13] Gunaydin also cites a Ninth Circuit case that adopted a different, minority rule. 90 A.L.R. Fed. 3d Art. 1 (2024) (observing "[t]he majority of courts apply federal procedural law to determine the validity of contractual jury trial waivers"). But this Court must follow Third Circuit precedent. Moreover, the Ninth Circuit's rule only applies in diversity, not federal question, cases. ECF No. 1 ¶ 8.

In any event, the SCI Agreement complies with *Atalese*.[14] Gunaydin does not address YZER's arguments and authorities explaining why the SCI Agreement complies with *Atalese*. ECF No. 7-1 at 34-37. Even though he concedes "no magic words are required," Opp. at 29, he cites two cases that YZER has already explained are inconsistent with New Jersey Supreme Court precedent and decisions from other

---

[13] *Collins* undermines Gunaydin's request to apply New Jersey law. *Collins* ultimately held that *Texas law* controlled the scope question and rejected the plaintiff's argument that New Jersey had a materially greater interest or that applying Texas law would violate New Jersey law. 874 F.3d at 184–85.

[14] Gunaydin's arguments about his subjective understanding—or lack thereof—is irrelevant. Even for arbitration agreements, New Jersey applies the "general rule" that "'one who does not choose to read a contract before signing it cannot later relieve himself of its burdens.'" *Skuse v. Pfizer, Inc.*, 236 A.3d 939, 952 (N.J. 2020). Gunaydin admits he signed the SCI Agreement. The question isn't whether Gunaydin in fact read and understood it. The question is whether the SCI Agreement objectively explains "in some general and sufficiently broad way . . . the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." *Arafa*, 233 A.3d at 508; *Noonan v. Comcast Corp.*, No. 3:16–cv–00458, 2017 WL 4799795, at *7 (D.N.J. Oct. 24, 2017); *Ricci v. Sears Holding Corp.*, No. 14–3136, 2015 WL 333312, at *5 (D.N.J. Jan. 23, 2015) (Bumb, J.).

courts in this district. ECF No. 7-1 at 34-39 (noting the cases cited by Gunaydin demand the kind of "magic words" the Supreme Court has held is not required).[15]

*Finally*, Gunaydin has not shown the SCI Agreement is unconscionable. Gunaydin's allegation that he could not consult a lawyer before signing is not enough to show procedural unconscionability.[16] *Norcom Rsch., LLC v. Net2Phone Glob. Servs., LLC*, No. CV 20-12592 (SRC), 2021 WL 1153140, at *7 (D.N.J. Mar. 26, 2021), *aff'd*, No. 22-1243, 2023 WL 1098188 (3d Cir. Jan. 30, 2023). His reliance on supposed unequal bargaining power has been repeatedly rejected. *E.g., Vilches v. The Travelers Companies, Inc.*, 413 F. App'x 487, 493 (3d Cir. 2011). And he identifies no provisions in the agreement that are "so one-sided as to shock the court's conscience" and render them substantively unconscionable. *Id.*[17]

---

[15] Gunaydin also claims the SCI Agreement is "legally deficient" because its font is smaller than that required by the New Jersey Plain Language Act (PLA). But the PLA is inapplicable because it only applies to consumer contracts. And the SCI Agreement's arbitration provision wasn't buried in indecipherable text. It appears prominently just before Gunaydin's signature.

[16] YZER disputes Gunaydin's allegations. Regardless, they are insufficient to show unconscionability. But if the Court disagrees, it should deny YZER's motion without prejudice so YZER can take discovery on Gunaydin's allegations.

[17] Although Gunaydin's *declaration* includes details about his finances (but not his wife's), his *Opposition* does not argue that arbitration would preclude him from effectively vindicating his rights, so that argument is waived. Even if not waived, Gunaydin "does not adequately allege any facts indicating that the arbitration fees would be prohibitively expensive" and otherwise fails to show unconscionability. *Singh*, 235 F. Supp. 3d at 676.

## V.  ALTERNATIVELY, THE COURT SHOULD STRIKE THE CLASS AND COLLECTIVE ALLEGATIONS.

First, Plaintiffs concede the YZER Arbitration Agreement's class and collective waiver applies even outside of arbitration. Opp. at 37 n.25. As previously explained, Plaintiffs' argument that the contract is "inoperative" is wrong.

Second, the fact that the other three contracts waive class and collective actions in arbitration reflects the parties' intent to resolve their disputes on an individual basis. Each contract likewise has a severability provision. Logistics-Carrier Agreement, § 15(c); Openforce Agreement, § 21 & Sch. B, § 9; SCI Agreement, § 23. Accordingly, even if the Court does not compel arbitration, it should still give effect to the parties' obvious intent to resolve disputes on an individual basis. That is precisely what the courts did in the cases YZER cited. ECF No. 7-1 at 39.

Finally, at a minimum, the Court should strike Plaintiffs' FLSA collective allegations for lack of personal jurisdiction to the extent they assert a nationwide collective. Plaintiffs don't appear to oppose this request, Opp. at 5 n.7, and they provide no reason to disregard the Third Circuit's binding precedent in *Fischer v. Fed. Express Corp.*, 42 F.4th 366 (3d Cir. 2022); *Wilhoit v. AstraZeneca Pharms., LP*, No. 22-1634, 2024 WL 706901, at *5 (D. Del. Feb. 21, 2024) ("[A] court may strike collective action allegations under the [FLSA] pursuant to Rule 12(f) and 29 U.S.C. § 216(b).").

Dated: May 12, 2025                    Respectfully submitted,

                                       */s/ Dylan C. Goetsch*

                                       Dylan C. Goetsch

                                       Andrew J. Butcher (*pro hac vice*)

                                       SCOPELITIS, GARVIN, LIGHT, HANSON
                                       & FEARY, P.C.
                                       30 West Monroe Street, Suite 600
                                       Chicago, IL 60603
                                       Telephone: (312) 255-7200
                                       dgoetsch@scopelitis.com
                                       abutcher@scopelitis.com

                                       *Attorneys for YZER, LLC*

4931-7857-5926, v. 7

16