[Docket No. 7]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

MUHAMMED GUNAYDIN and DELVIS TAVAREZ, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

YZER, LLC,

    Defendant.

Civil No. 25-198 (RMB-EAP)

**OPINION**

**APPEARANCES**

Jeremy Edward Abay
Lichten & Liss-Riordan, P.C.
30 Washington Avenue
Suite D-3
Haddonfield, NJ 08033

    *Attorney for Plaintiffs Muhammed Gunaydin and Delvis Tavarez*

Dylan Craig Goetsch
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
30 W Monroe
Suite 1600
Chicago, IL 60603

    *Attorney for Defendant Yzer, LLC.*

**RENÉE MARIE BUMB, Chief United States District Judge**

    This matter comes before the Court on a Motion to Stay and Compel Arbitration or, in the Alternative, to Strike Class and Collective Allegations (the

"Motion") filed by Defendant Yzer, LLC. ("Defendant" or "Yzer"). [Docket No. 7 ("Def. Br.").] Plaintiffs Muhammed Gunaydin and Delvis Tavarez ("Plaintiffs" or "Gunaydin" or "Tavarez") have opposed. [Docket No. 23 ("Pls. Br.").] Yzer submitted a reply brief in further support of its Motion. [Docket No. 27 ("Def. Reply").] Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b), the Court did not hear oral argument. For the reasons set forth below, the Court will **Deny** Defendant's Motion, without prejudice, and order expedited discovery.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this action before this Court as a class and collective action. [*See* Docket No. 1 ("Compl.") at 1.] They allege that Yzer violated state and federal law and seek to represent a class of similarly situated individuals who performed delivery work in New Jersey under the New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.1, et seq. ("NJWPL"); the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56a, et seq. ("NJWHL"); and the Fair Labor Standards Act, 29 U.S.C. § 201-209 ("FLSA") [*Id.*]

Yzer is a logistics company, domiciled in Florida, engaged in the transportation and delivery of freight by independent carriers [Def. Br. at 1; Docket No. 7-3 at 1.] Allegedly, Yzer contracts with carriers to provide "last-mile" delivery services, utilizing third-party administrators, including Contractor Management Services, LLC d/b/a Openforce ("Openforce") and Subcontracting Concepts, LLC ("SCI"), which provide administrative and payment-processing services across the country [Compl. at 3; Def. Br. at 1-2.]

2

Plaintiffs are former delivery drivers who performed services for Yzer in New Jersey [Compl. at 1-2.] Their duties included picking up products from various warehouses in New Jersey and delivering them to pharmacies, hospitals, and long-term care facilities on behalf of Yzer throughout the State [*Id.* at 3.]

### 1. Plaintiff Tavarez

Yzer alleges that Tavarez executed several agreements in connection with Tavarez's work for Yzer, all on August 29, 2023 [Docket Nos. 7-2 at 2-5; 7-3 at 9; 7-5 at 1.] None of the agreements, however, are between Tavarez and Yzer. First, there is the Logistics-Carrier Agreement ("LCA"), between Yzer as the "Logistics Provider" and "DDA Truck Corp" ("DDA Truck") as the Independent Carrier ("IC"), [Docket No. 7-2 at 1.] The LCA contained an "Arbitration and Class Waiver" that stated:

> LOGISTICS PROVIDER and IC agree that any demand, assertion, or claim or cause of action for money, property, enforcement of a right, or equitable relief by and between the PARTIES shall be settled by arbitration administered by the American Arbitration Association ("AAA"). . . .

[Docket No. 7-2 at 6.]

Second, there is an Arbitration Agreement ("YAA"), which covers "all disputes, claims, and/or controversies arising out of Contractor's relationship with Company and the termination thereof" [Docket 7-5 at 1.] It is between Yzer and DDA Truck [*Id.* at 1]. It states "Contractor agrees to arbitrate all disputes, claims, and/or controversies [they] may at any time have against the Company, its parent, [or] its

3

corporate affiliates" [*Id.*] The agreement also contained a "Waiver of Right to Class/Collective Action" [*Id.* at 3.]

Finally, there is a Carrier TPA Service Agreement ("TPA"). It is an agreement between Openforce and DDA Truck [Docket No. 7-3 at 1.] Under Schedule B of this agreement, DDA Truck agreed to arbitrate all claims under the AAA rules and to resolve them on an individual basis [*Id.* at 1-3.] This agreement, and its terms, extends to all intended third-party beneficiaries, including Yzer [*Id.* at 20.]

### 2. Plaintiff Gunaydin

Yzer alleges that Gunaydin executed an agreement in connection with his work for Yzer. This agreement, however, is between Gunayadin and Subcontracting Contcepts, LLC ("SCI") [Docket No. 7-4 at 1.] It is an Owner/Operator Agreement and was entered into on April 30, 2021 [*Id.*] Section 26 of this Agreement contains a mandatory arbitration clause which states

> All other disputes, claims, questions, or differences beyond the jurisdictional maximum for small claims courts within the locality of the Owner/Operator's residence will be finally settled by arbitration in accordance with the policies of the Federal Arbitration Act and New York State's Arbitration provisions.

[*Id.* at 6.]

The SCI also contains a class and collective action waiver which states "Neither you nor SCI will be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class" [*Id.*]

4

### 3. Yzer's Motion

On March 10, 2025, Yzer filed the present motion seeking to compel arbitration of Plaintiffs' claims and to stay the matter, pending arbitration, or in the alternative, strike Plaintiffs' class and collective allegations [Def. Br.]

## II.   DISCUSSION

### A. Motion to Compel Arbitration

The Court first addresses Yzer's Motion to Compel Arbitration. The Federal Arbitration Act ("FAA") "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "Before compelling a party to arbitrate pursuant to the FAA [however], a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). A court shall order the parties to proceed with arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that [they] do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). The "presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Kirleis*, 560 F.3d at 160 (quoting *Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). "The party

resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

"[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 776 (3d Cir. 2013) (internal citations and quotations omitted). The Court considers no other documents in resolving this Motion other than the Complaint and its exhibits. Affordable Dentures-Audubon, Michelle Aitken, DDS, P.A. v. Affordable Care, LLC, 2018 WL 2134037, at *7 (D.N.J. May 9, 2018) (considering only pleading and exhibits in deciding motion to compel arbitration); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."). When arbitrability is not apparent on the face of the complaint, however, then further development of the factual record is necessary, and the motion should be decided under a summary judgment standard. Guidotti, 716 F.3d at 774. Hence, the Court must deny the motion and may order targeted, expedited, pre-arbitration discovery. See, e.g., Parilla v. IAP Worldwide Servs., V.I., Inc., 368 F.3d 269, 284 (3d Cir. 2004) (remanding for "the development of a record"); Guidotti, 716 F.3d at 774-75. Stated differently, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate," or if the plaintiff produced "additional facts

sufficient to place the agreement to arbitrate in issue" in their responsive pleadings, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." Id. at 775 (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F.Supp. 2d 474, 482 (E.D.Pa. 2011)).

As explained herein, Yzer's motion raises more questions than answers. Yzer's premature filing has burdened the Court with an underdeveloped record.

### 1. Plaintiff Tavarez

At the onset, the Court is unable to rule on any claims asserted by Plaintiff Tavarez based on the Complaint and exhibits alone. Critical facts–such as the sequence in which his three purported agreements were signed on August 29, 2023– remain in dispute and are unsupported by competent evidence. [Pls. Br. at 11; Def. Reply at 10.] Without such information, the Court cannot determine which agreement, or agreements, govern its analysis. As Plaintiffs previously assert, the LCA contains language that supersedes the other two agreements. [Pls. Br. at 11 (citing Docket No. 7-2 at 9).]

Further, neither party addressed the issue of who, if anyone, could be compelled to arbitration as Tavarez's purported agreements list DDA Truck, not Tavarez individually, as the contracting party. [Docket Nos. 7-2 at 1, 7-3 at 1, 7-5 at 1.] There are legitimate questions that remain unanswered: Who is DDA Truck? Is Taverez the proper party? "[G]iven that no discovery has taken place, [not to mention adequate briefing,] any summary conclusion is unwarranted." *Guidotti*, 716 F.3d at 780.

Accordingly, the Court denies Defendant's motion without prejudice as it pertains to Tavarez. *Superior Offshore Int'l, Inc. v. Bristow Group*, 490 F. App'x 492, 500 (3d Cir. 2012); *Pub. Loan Co., Inc. v. Fed. Deposit Ins. Corp.*, 803 F.2d 82, 86 (3d Cir. 1986).

### 2. Plaintiff Gunaydin

Turning to Plaintiff Gunaydin, Yzer argues that it can compel Gunaydin to arbitrate his claims due to an arbitration clause in Gunaydin's contract with SCI. [Def. Reply at 11 (quoting Docket No. 7-4 at 6).] However, it is not clear to this Court the basis of Yzer's standing to enforce the SCI agreement. Relying on *Easterday v. USPack Logistics LLC*, 2016 WL 11704552 (D.N.J. June 29, 2016), Yzer claims that it is an intended third-party beneficiary due to the arbitration clause extending to "SCI's clients" [Docket No. 7-4 at 6.] Yet, Yzer provides no evidentiary basis to support the claim that it was a "client" of SCI and neither party has adequately addressed this issue. [Def. Reply 11.]

Notwithstanding this shortcoming, the Court notes that, as it pertains to arbitration, the Supreme Court has recognized that the "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third party beneficiary theories, waiver[,] and estoppel.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quoting 21 Williston on Contracts § 57:19, at 183 (4th ed. 2001))

> The essence of contract liability to a third party is that the contract be made for the benefit of said third party within the intent and contemplation of the contracting parties. Unless such a conclusion can be derived from the contract or surrounding facts, a third party has no

8

> right of action under that contract despite the fact that he may derive an incidental benefit from its performance.

*Air Master Sales Co. v. Northbridge Park Co-Op, Inc.*, 748 F.Supp. 1110, 1117 (D.N.J. 1990) (quoting *Gold Mills, Inc. v. Orbit Processing Corp.*, 297 A.2d 203, 204 (N.J. Law Div. 1972)). "New Jersey courts have been hesitant to imply a third[-]party beneficiary obligation unless the parties explicitly indicate that (1) the claimant is an intended beneficiary of the proposed arrangement and (2) that the claimant will have a direct claim under the contract." *Id.*; *see also Dravo Corp. v. Robert B. Kerris, Inc.*, 655 F.2d 503 (3d Cir. 1981).

    The SCI agreement is far from explicit in its conferring of rights. It frequently references "clients" and "customers," affording the two groups different privileges under the agreement [Docket No. 7-4 at 2-5.] Although these provisions reference how third parties may benefit from certain portions of the contract, such as the arbitration agreement, there is no clause that explicitly confers the right to enforce or bring a claim under this agreement to a third-party, nor is there any language defining the two groups. The drafter intended "client" and "customer" to constitute two separate groups as they included language such as "customers or their clients" [Docket No. 7-4 at 4.] *See also* 17A *C.J.S. Contracts* § 296(2); *and Stony Battery RD Prop. Owner LLC v. QVC, Inc.*, 2025 WL 1367819, at *6 (3d Cir. May 12, 2025) ("[w]here a contract evidences care in its preparation, it will be presumed that its words were employed deliberately and with intention.")

9

Moreover, *Easterday* is factually distinct from the present matter, as the third-party beneficiary was determined to be a "customer" under the agreement, and the arbitration agreement in the instant agreement confers benefits only to "clients." 2016 WL 11704552, at *11-12; [Docket No. 7-4 at 6.] Does Yzer fit into the "customer" category, rather than "client?" The agreement provides that Gunaydin "may be asked by delivery <u>customers</u> to carry an identification card . . . and may be furnished with clothing . . . containing such name and/or logo" and Gunaydin certified that he was provided with and instructed to wear a "Yzer uniform" [Docket No. 7-4 at 2, 23-1 at 1.] (Emphasis added). Such a distinction is a genuine issue of material fact and cannot be determined summarily. *Guidotti*, 716 F.3d at 780.

Accordingly, this Court denies, without prejudice, Yzer's motion to compel Plaintiff Gunaydin to arbitration as Yzer has failed to establish adequate standing to enforce the arbitration clause of the SCI agreement. Until this Court is provided additional evidence through discovery as to Yzer's standing, it will defer on ruling on the arbitrability of Gunaydin's SCI agreement. *Superior Offshore Int'l, Inc.*, 490 F. App'x at 500.

**B. Motion to Strike Class and Collective Allegations**

Yzer asserts Plaintiffs' class allegations should be struck due to the class waivers contained within Plaintiffs' respective agreements as well as an anticipatory lack of personal jurisdiction over out-of-state opt-in plaintiffs [Def. Br. at 30-31.] In contrast, Plaintiffs argue that these provisions are unenforceable as the NJWTA protects their right to maintain a class action, which cannot be contracted around. [Pls. Br. at 35

10

(citing *Pace*, 317 A.3d at 488).] Or, in the alternative, that the class waiver is only applicable to class arbitration, not litigation [*Id.* at 38.]

"In this District, 'dismissal of class allegations at [the pleading] stage should be done rarely and [] the better course is to deny such motion because the shape and form of a class action evolves only through the process of discovery.'" *In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, 537 F. Supp. 3d 679, 752 (D.N.J. 2021) (quoting *Horowitz v. AT&T Inc.*, 2018 WL 1942525, at *17 (D.N.J. April 25, 2018)). "It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted." *Id.*

At this stage, given so many deficiencies, the Court cannot make a determination on this issue without additional discovery. Therefore, the Court will deny without prejudice Yzer's motion to strike the class and collective allegations.

### III.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Stay and Compel Arbitration, or in the Alternative, to Strike Class and Collective Allegations is **DENIED, without prejudice**. An accompanying Order shall issue.

| | |
|---|---|
| **October 30, 2025** <br> Date | s/Renée Marie Bumb <br> RENÉE MARIE BUMB <br> Chief United States District Judge |